## STATE *v.* DAVID & CYNTHIA SPRAGUE.

A person, other than the mother of a bastard child, cannot be convicted of the offence " of concealing the birth of such child, so that it may not be known whether it was born alive or not," under the 86th section of the "Act concerning crimes and punishments," unless upon an indictment which charges the mother of the bastard also with the offence; the words and policy of the act contemplating no such crime, unless the mother be a participator in it.

Such person may, however, upon proper proof, be convicted of aiding, assisting, abetting, counselling, commanding, or procuring the commission of such an offence, upon an indictment which charges the mother with the offence, and such other person as an aider, abettor, &c., although the indictment does not charge such person with being "*present*," aiding, abetting, &c.

INDICTMENT for concealing the birth of a bastard child, so that it might not be known whether it was born dead or alive. The indictment was found in the court of common pleas for the county of Providence, under the 86th section of the act of this state concerning " crimes and punishments," which provides, that " Every *woman who shall be convicted of concealing the birth of any issue of* HER *body*, which, if it were born alive, *would be a bastard*, so that it may not be known whether it was born dead or alive, or *of concealing the death of any infant bastard child* BORN OF *her body*, so that it may not be known whether such child was murdered or not, shall be imprisoned not exceeding ten months, or be fined not exceeding three hundred dollars."

By the 120th section of the same act, it is provided, that " Every person who shall aid, assist, abet, counsel, hire, command, or procure another to commit *any crime or offence*, shall be proceeded against, as principal or as accessory before the fact, according to the nature of the offence committed; and

22 *

upon conviction shall suffer the like punishment as the principal offender is subject to by this act."

The indictment contained two counts, the

First of which charged, "that Jane Fowle, otherwise called Jane Sprague, of Cranston, in said county, spinster, on the 11th day of November, in the year of our Lord, 1855, with force and arms, at Cranston aforesaid, in the aforesaid county of Providence, being big with a certain child, the same day and year last aforesaid, at Cranston aforesaid, did bring forth the said child of the body of her the said Jane Fowle, otherwise called Jane Sprague, which said child, so being brought forth alive, was by the laws of this state a bastard, *and that David Sprague of said Cranston, laborer, and Cynthia Sprague, wife of the said David, the same day and year aforesaid, with force and arms, did conceal the birth of said child, so that it might not come to light whether* the said child was born dead or alive, against the form of the statute, &c."

The second count pursued the language of the first, so far as the allegations relating to the birth of the child were concerned, and then charged "that the said Jane Fowle, otherwise called Jane Sprague, afterwards, to wit, on the same day and year last aforesaid, at said Cranston, *did conceal* the birth of said child, so that it might not appear whether said child was born dead or alive, *and that David Sprague, of said Cranston, laborer, and Cynthia Sprague, wife of the said David, at said Cranston, on the said eleventh day of November, in the year of our Lord one thousand eight hundred and fifty-five, did feloniously and wickedly aid, assist, abet, counsel, hire, command, and procure the said Jane Fowle, otherwise called, &c., the said offence, in manner and form aforesaid, to do and commit, against the form of the statute*," &c.

At the trial, which took place before Mr. Justice Sherman, at the last December term of the court of common pleas for the county of Providence, a general verdict of guilty was rendered against both the prisoners, and the case was brought by them to this court, upon exceptions to the rulings of the judge at the trial.

The bill of exceptions did not disclose the evidence submitted to the jury and upon which the judge ruled, but merely, "that upon trial of said indictment at said term, the said defendants

State *v.* Sprague.

objected that they could not be legally indicted for, or convicted of, the concealment of the birth of a child born of the body of said Jane, nor of aiding or abetting her in concealing the same, and requested the court to charge the jury, that the said defendants could not be convicted or found guilty upon said indictment; but the court refused so to rule or charge, but on the contrary did rule and charge the jury, that the defendants could be legally indicted for concealing the birth of said child, and of aiding and abetting the said Jane in concealing said birth, and that they might be found guilty and convicted, upon either, or both of said counts."

*Blake* for the prisoners.

1st. The prisoners ought not to have been convicted upon the first count as principals, because, by the language of the statute, the female who conceals *the issue of her own body* is · alone punishable.

2d. They ought not to have been convicted as accessaries, under the second count, for without reference to the peculiar character of this statute offence, it is a misdemeanor only, and all who are guilty are principals in a misdemeanor, and must be charged, and proved guilty, and convicted as such. The second count charges, that they aided and abetted in the commission of the crime, but not that they were *present* aiding and abetting, &c. 1 Chit. Crim. Law, 261, 262; 1 Russell on Crimes, 29, 31, and note; 6 Dane Abr. 655; 1 Leach Cr. Law, 581; 3 Greenl. Evid. § 49; 1 Bishop's Crim. Law, § 483; *Brockway* v. *The People,* 2 Hill, 558; *The People* v. *Erwin et al.* 4 Denio, 129; Foster's Crim. Law, 73; *Commonwealth* v. *Knapp,* 9 Pick. 513; *Rex* v. *Russell,* 38 Eng. C. L. R. 42; *Reg.* v. *Luddington,* 9 C. & P. 79; S. C. 38 Eng. C. L. R. 42; *State* v. *Riker,* 29 Maine, 35.

3d. That, however this might be in misdemeanors generally, the prisoners could not, from the peculiar nature of this offence, be convicted as aiders and abettors merely. 1 Bishop's Crim. Law, §§ 323, 484–487; *Commonwealth* v. *Willard,* 22 Pick. 476; *Commonwealth* v. *Dane,* 1 Pick. 387; *State* v. *McCarn,* 11 Humph. 494; *Loughbridge* v. *The State,* 6 Missouri, 594; *Rex* v. *Douglas & Hall,* 7 C. & P. 644; S. C. 32 Eng. C. L. R. 670; *Reg.* v. *Wright,* 9 C. & P. 754; S. C. 38 Eng. C. L. R. 322.

*Hart*, Attorney-General.   It is a general principle of law that any person who aids and abets a misdemeanor is a principal, whether the offence is at common law or is created by statute.

The 120th section of our "Act concerning crimes and punishments," (Dig. 1844, p. 398,) enacts and adopts this principle.

AMES, C. J.   This indictment, in the *first* count, charges upon the prisoners the concealment of the birth of the bastard child with the guilty intent, without inculpating the mother of the bastard, and treating the prisoners, to use language appropriate only to a felony, as principals in the first degree.   In the *second* count it charges the offence upon the prisoners, again to use the language appropriate to a felony only, as accessaries before the fact, and not as principals in the second degree; there being no charge in the second count that the prisoners were "present" at the commission of the offence, aiding, abetting, &c., in the commission of it.   The bill of exceptions does not disclose the evidence submitted to the jury, and upon the legal effect of which the judge ruled in the manner complained of.   If, therefore, upon any supposed state of the evidence, the prisoners could have been convicted of the offence in question as charged in either of the counts of this indictment, the verdict must stand ; which disposes of one suggestion, contained in the brief of the counsel for the prisoners submitted to us, that it appeared, by the evidence in this case, that the child was still-born.

The first question raised by this bill of exceptions is, can the prisoners be properly convicted, in any state of the evidence, upon the *first* count of this indictment ? tantamount to the question, whether any one but the mother can be convicted of this statute offence, as a principal, upon a count framed as that count is ?

It seems to be supposed by the counsel for the prisoners, that from the peculiar nature of the offence and the descriptive characteristics of it set forth in the statute, there can be no conviction of aiders and abettors under it even, as we understand his brief, though such aiders and abettors are charged and proved to have been *present*, aiding and abetting in the commission of the offence.

The argument is, that as none but the *mother* of the child can

by the descriptive terms of the statute in setting forth the crime, or by the policy of it, be guilty, so to speak, of the principal offence, and as all guilty of a misdemeanor are, if guilty at all, principals, and must be charged as *doers*, it follows, that none but the mother can be guilty, and so legally convicted of the offence at all, no matter upon what charge, or upon what proof in support of it.

We should be sorry to come to this conclusion; and perhaps some confusion at the trial, as certainly at the short hearing before us, arose between this point made by the counsel for the prisoners, and a much narrower one specially insisted upon in the brief, since the hearing by leave reserved, submitted to us, and to which we shall hereafter call attention.

Now, we have no doubt, but that a person who aids, abets, counsels, commands, or procures the commission of this offence, peculiar as it is, and specially as it contemplates, in the language and policy of the statute, the mother as the principal actor in it, may be guilty of it as a principal offender, and of course, upon an indictment properly framed, be legally convicted of it, as such. It by no means follows, that because the mother alone can be guilty of the actual concealment described in the statute, and that if she be *not* guilty no other person can be,— that if she *be* guilty, others may not be guilty as principals, *present*, in the sense of the law, and aiding and assisting her in the criminal concealment, and participating in, and working with her under the criminal intent.

If the rules of the common law were defective in application to such persons, under such a statute, in permitting them to escape punishment, the 120th section of our statute relating to crimes and punishments would be sufficient to create the crime, as well as to define the punishment.

The very difficulty suggested was solved, in relation to a felony, by the English judges, upon a case reserved in *Rex* v. *Potts* alias *Dangreen*, 1 Russ. & Ryan C. C. 353; S. C. 2 Eng. Cr. Cas. 353. That was an indictment framed under the 57 Geo. III. and in the thirteenth count charged, in substance, that one John Williams feloniously personated and falsely assumed the name and character of Thomas Jacobs—a person entitled to

a certain allowance of money for services rendered in certain of
his majesty's ships,—in order to receive such allowances in fraud
of the Greenwich Hospital, and that Martha Potts alias Martha
Dangreen, *was present, aiding, assisting*, &c. Williams, in the
commission of the offence.   There was also, amongst the other
counts, a count charging the prisoner with having procured
Williams to personate Jacobs for the criminal purpose ; and
that by such procurement he did personate him for that purpose.
There was no evidence of previous procurement, and the jury
acquitted the prisoner upon the first and all the other counts of
the indictment, except the thirteenth, upon which, the evidence
being that she was present and asserted that Williams was Ja-
cobs, the jury found her guilty.   As the statute made no pro-
vision against aiders and abettors in the part of it relating to
the personating of seamen, though it did as to another offence
declared by it, as to forging certain letters of attorney to enable
persons to receive the wages, &c. of seamen, the learned judge
doubted as to the conviction on this count, and further doubted,
" whether the doctrine of a principal in the second degree (which
seemed to be the idea of this, the thirteenth count) could apply
to this count, because principals in the second degree and prin-
cipals in the first degree may be charged jointly as doing the
act, whereas it appeared difficult to allege that *a man* AND *a
woman* jointly personated *one man*."   The judges, however, held♦
that a person *present*, aiding, and abetting another, was within
the act.

There is nothing then *at least, in the nature of an offence
merely, because described as one which must be committed by
*one* person, or by a person of a certain sex, or in a certain rela-
tion, which renders it at least, if a felony, impossible to be
committed by one, even as a principal in the second degree,
or which renders conviction of it impossible, under an indict-
ment charging that person " as present, aiding, &c." that is, prop-
erly so charging him, and upon proof supporting that charge.

But even if this were otherwise, either as to felonies or mis-
demeanors, or both, at the common law, the 120th section of
our act in relation to crimes and punishments is conclusive as
to the matter, and in *some form* renders all who " aid, assist,

abet, counsel, hire, command, or procure" another to commit *any* crime or offence, liable to be proceeded against, and to be punished to the extent of the principal offender. It is true, as suggested by the counsel for the prisoners, that this section is not in the precise words of the 31st section of 9 Geo. IV. ch. 31, a statute punishing, amongst others, the same species of crime as that we are now considering, and in the 31st section of which it is enacted, " that every person who shall counsel, aid, or abet the commission of any misdemeanor punishable under this act, shall be liable to be *proceeded against* and punished *as a principal offender.*" We shall have occasion hereafter to consider the true interpretation of this section; and will now merely say, in passing, that we do not construe it as directing that aiders and abettors of the offences under it shall be proceeded against *as principals*, but only that they shall be punished in the same manner as principal offenders.

By virtue of the 120th section, then, of the crimes act of this state, we entertain no more doubt that one who counsels and procures a woman to commit this offence, may be punished, upon proper proof adapted to support a properly framed charge of the offence, than that such an one may be proceeded against in England, under the act of 9 Geo. IV. ch. 31, § 31, as shown by the cases of *Rex* v. *Douglas & Hall*, 7 C. & P. 644 ; S. C. 32 Eng. C. L. 670, better reported in 1 Moody's Cr. Cas. 480—1 Eng. Cr. Cas. 480 ; *Reg.* v. *Wright et al.* 9 C. & P. 754 ; S. C. 38 Eng. C. L. 322, and *Reg.* v. *Bird & Nash*, 2 Car. & Kirwan, 817 ; S. C. 61 Eng. C. L. 817.

Taking for granted, however, that aiders and abettors, counsellors and procurers, of this offence, may be punished as well as the mother of the child, the question still remains, can they, in any state of the proof, be properly convicted under a count framed like the *first* count of this indictment. This count, it will be noticed, charges no offence under this statute against *the mother*, Jane Fowle, alias Jane Sprague, but setting forth that *she* became the mother of a bastard child, exclusively charges the concealment of its birth, with the criminal intent mentioned in the statute, upon the prisoners. The statute quite specially defines the offence, as the concealment by the *mother*

of the birth of *her bastard* child " so that it may not be known whether it was born dead or alive ;" and its policy, as suggested by the counsel for the prisoners, is satisfied by confining its operation to cases in which the mother is the principal actor in the offence, since the motive to child-murder of infamous offspring is stronger in general with her than with any one else ; and the birth cannot, except in rare instances, be concealed without her coöperation or connivance. The participation in the offence by the mother, as the principal offender, seems to us, therefore, essential to constitute this offence ; and the allegation of that participation in it, to be, therefore, essential to the description of the offence in the indictment. The mother, it is true, need not have been the principal *actor*, in the physical sense of the term, or even to have *acted* at all, to make her guilty under the statute ; for, as said by Platt, Baron, in summing up in *Reg.* v. *Nash & Bird*, just quoted, if the mother " concurred with the other defendant (a male with whom she cohabited) in endeavoring to conceal the birth of the child, and, in pursuit of that object, caused him by her persuasion to bury the body secretly, she is guilty of the endeavor by secret burying charged in this indictment, although the burial was effected by the hand of another and not in her presence." There can, however, be no crime, under the statute, unless the mother of the bastard is, in a legal sense, one of the agents in it ; and as this count alleges nothing of the sort, and the offence charged against the defendants has no existence at the common law, it is, on this ground, fatally defective, and cannot sustain the conviction. It is no answer to say, that in misdemeanors all are principals, and that this count charges the defendants as such ; for the reply is, that it does not charge them with any crime known to the law, since the mother is not stated to have had any agency in the commission of it ; and she alone, from the statute definition, can be the principal offender, others being liable only as counsellors, aiders, abettors, and procurers of her crime. What seems so evident from the words of the statute, interpreting them, too, in a manner to satisfy its policy, is fully supported by the authorities. Thus, in *Rex* v. *Douglas & Hall*, 7 Car. & Payne, 644 ; S. C. 32 Eng. C. L. 670, the judges, according to the report,

inclined to the opinion, that under the 14th section of the act of 9 Geo. IV. ch. 31,—the section which defines the offence of secret burying of a bastard child for the purpose of concealing whether it was born alive or not,—the woman only is indictable for the *concealment* of the birth, the persons, if any, counselling the concealment, being punishable under the 31st section of the same statute. In *Reg.* v. *Wright et al.* 9 Car. & Payne, 754, S. C. 38 Eng. C. L. 322, which was an indictment against Ann Wright for the murder of her child by suffocation, the other prisoners being charged as aiders and abettors in the crime, upon its coming out in proof that the child must have died before it was fully born, the counsel for the prosecution proposed to go into evidence against all the prisoners as to concealment under the 14th section of 9 Geo. IV. ch. 31. Baron Gurney, however, was of opinion that, *on such an indictment,* no one could be convicted of the concealment except the mother of the child; whereupon, the mother, Ann Wright, was convicted, and the other prisoners acquitted altogether. To the same effect, as we understand it, is the ruling of Baron Platt in *Reg.* v. *Bird & Nash,* 2 Car. & Kirw. 817, S. C. 61 Eng. C. L. 817, in which, notwithstanding the proof showed that the paramour of the mother was the sole actor in the secret burying, which was done by his hand and out of her presence, yet, after ruling, as we have already quoted, that the mother might be found guilty under a count charging " that she by secret burying endeavored to conceal the birth," the learned judge also instructed the jury,—the count further charging " that the other defendant, Joseph Nash, counselled, aided, and abetted her " in the concealment,—" that if the other defendant, acting under her persuasion, and intending to conceal the birth of the child, buried the body of the child, he is guilty of aiding and abetting in the commission of the offence."

Without going into the analogous cases cited by the counsel for the prisoners, we are satisfied by these which bear directly upon the case at bar, as well as from the definition of this offence given by the statute creating it, that the mother of the bastard child can alone properly be charged with the offence of the criminal concealment, and must be so charged, in order to

describe this statute offence, in all cases, in the indictment, and that others, if any are intended to be reached, must in some form be coupled with her as counsellors, procurers, aiders, or abettors; and hence, that the first count of this indictment cannot sustain the verdict.

The next question raised by the bill of exceptions is, whether under any supposable state of the proof, it could have supported the *second* count of this indictment, which charges the criminal concealment, described in the statute, upon the mother, Jane Fowle, alias Jane Sprague, and that the prisoners " did feloniously and wickedly *aid,* assist, abet, *counsel, hire, command,* and *procure* the said ·Jane Fowle, otherwise called Jane Sprague, ·the said offence, in manner and form aforesaid, to do and commit against," &c.

It is objected to this count, that it uses only the language appropriate to accessaries before the fact, of which there can be none in this offence, since all are principals in misdemeanors, and should be charged as such; and that it should have charged at least that the prisoners " being present," " did wickedly, &c., aid, assist," &c., in language appropriate to charge them, in a case of felony, as principals in the second degree. If we once admit that under our statute against the criminal concealment by a mother, of the birth of her bastard child, and by force of the 120th section of the crimes act, aiders and abettors, counsellors and procurers, of the crime, can be proceeded against at all, this objection cannot avail. Now, as we have already hinted, we feel bound to construe the imperative provision of the 120th section of our crimes act, that aiders, abettors, counsellors and procurers, of every crime and offence known to our law, shall be proceeded against as principals or accessaries before the fact, *according to the nature of the offence,* as including this offence, notwithstanding its peculiar character, as well as every other ; and the widest latitude, as to the mode of proceeding in any particular case, seems to be purposely given, by allowing it to be dictated by the nature of the offence, in order to effect the substantial justice intended by this section of the statute. We agree with the counsel for the prisoners, that this section does not prescribe *the mode of proceeding,* as he construes the

act of 9 Geo. IV. ch. 31, § 31, to do, for the enforcement of criminal justice upon aiders and abettors of crimes created by that act. It leaves all that, as he argues, to be regulated by the common law; but again, which he does not seem to consider, the section imperatively requires that aiders and abettors shall be proceeded against and punished, even though they aid and abet a crime in which, from its peculiar nature and statute description, only one person can be the principal offender. Certainly, there can be no objection, where the fact is so, in charging the concealment upon the mother, and that others, if any, "*were present,*" aiding and abetting her in the act of concealment. But suppose that the aiders and abettors were not present, and that there is proof of previous counsel or procurement, what is there in the common law, looking at the nature of the offence, as one in which, by the statute creating it, the mother alone, as is admitted, can be charged as the actual and principal concealer of the birth, and again at the statute necessity of charging aiders and abettors, counsellors and procurers of the offence in some form, which forbids the criminal pleader from charging them, though the offence be but a misdemeanor, by force of the permission of the statute and the necessity of the case, if, in accordance with the truth, in the form appropriate to accessaries before the fact? It will be noticed in this connection, that the 120th section of our crimes act does not confine its operation merely to aiders and abettors *present* at the commission of the offence, but extends it to all who aid, assist, and abet, whether present or not,—to all indeed, who " counsel, hire, command, or procure " any person to commit any crime or offence. The objection taken to this count would confine this section, in case of misdemeanors, to aiders and abettors *present* at the commission of the offence; that is, to such as, if the offence were a felony, would be principals in the second degree, leaving all such as would not fall within this category (since we have seen that they cannot be directly charged, so to speak, as principals in the first degree, with the criminal concealment,) to escape unwhipped of the justice intended by the section. We deem it more conformable to right reason, and the common and statute law *both* of this state, to avoid such a conclusion, under

the wide permission, as to the mere form of proceeding, given by this section for the express purpose, as we believe, of accomplishing the substantial justice designed by it.

As we are desirous, however, in obedience to the spirit of our criminal justice, to give the prisoners the benefit of every, even the most technical exceptions in their favor, and have been much impressed by the careful and ingenious argument urged upon us by their counsel, we are glad to be supported in our conclusions against them upon this second count by authority directly in point. In *Reg.* v. *Bird & Nash*, 2 Car. & Kirw. 817; S. C. 61 Eng. C. L. 871, the *second* count of the indictment under which both prisoners were found guilty, as stated in the report of the case, charged, in substance, that " the defendant, Ann Bird, was delivered of a child which instantly died, and that she by secret burying endeavored to conceal the birth ; and that the other defendant, Joseph Nash," counselled, aided, and abetted " her in the commission of that offence," in the very words of stat. 9 Geo. IV. ch. 31, § 31, without stating, so far as the report shows, that Nash was "*present*" at the concealment by her, counselling, &c. In other words, the offence of the paramour of the mother seems, in that case, to have been charged as the terms of the above statute of George, in our view, authorize it to be, as that of an accessary before the fact, and not as that of a principal in the second degree. This seems to have been done, too, under a statute which, as construed by the counsel for the prisoners, requires those who counsel, aid, and abet the offence, to be proceeded against as principal offenders. We are satisfied, however, that, as construed by the English courts, the words of the 31st section of 9 Geo. IV. ch. 31, " shall be liable to be proceeded against and punished as a principal offender," were not designed to dictate the *form* of proceeding, but the words " as a principal offender " qualifying " punished " only, to leave the form of proceeding, as it is left by our 120th section, to follow the nature and exigencies of the case.

Our conclusion is, that in a proper state of the proof which under this bill of exceptions we are bound to suppose existed, the second count of this indictment is legally sufficient to sustain the verdict, and that the prisoners must be sentenced under it at the bar of this court.